UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

JOSEPHINE ROBINSON,

                               Plaintiff,

               -v-

GUCCI AMERICA, STAN SHERWOOD,
MATTEO MASCAZZINI, and CHRISTY
LELECK,

                              Defendants.

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/27/12

11-CV-3742 (JPO)

MEMORANDUM
OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Plaintiff Josephine Robinson ("Robinson") brings this action against Defendant Gucci America ("Gucci") for discrimination based on sex, race, national origin, and disability, and for retaliation for her opposition to those practices, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2008, *et seq.* ("Title VII"); the Americans with Disabilities Act; New York State Executive Law, Human Rights Law ("NYHRL") § 296; and the New York City Human Rights Law, N.Y.C. Admin. Code Title 8. Robinson also brings claims against Stan Sherwood ("Sherwood"), Matteo Mascazzini ("Mascazzini"), and Christy Leleck ("Leleck") for aiding, abetting, inciting, compelling, and/or coercing the aforementioned unlawful conduct in violation of NYHRL § 296(6). Mascazzini moves to dismiss the claims against him under Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Federal Rules"), for failure to state a claim upon which relief can be granted. For the reasons that follow, the Court denies Mascazzini's motion to dismiss.

I.  **Background**

   A. **Factual Background**

   The following facts are drawn from the allegations in the Complaint, which are presumed true for the purpose of this motion. The Complaint details an extensive history of allegedly discriminatory behavior on the part of various employees of Gucci. This summary focuses on the facts pertinent to the motion before the Court.

   Plaintiff Robinson was, from March 2008 to November 2010, employed as a tax attorney by Gucci. She is a dark-skinned, Latin female of West Indian national origin. Sherwood was, at all times relevant to this case, Executive International Tax Counsel, and was Robinson's supervisor at Gucci. Leleck was, at all times relevant to this case, the Director of Human Resources ("HR") at Gucci. Mascazzini was, at all times relevant to this case, Associate President of Gucci, and was also Robinson's supervisor.

   Almost from the time that she started at Gucci, Robinson was subjected to a series of racially and sexually harassing comments from Sherwood. It is not necessary to detail this conduct at this stage, given that the Complaint does not allege that Mascazzini was involved in this behavior, but for the sake of illustration, the Complaint describes one such incident as follows:

> On April 9, 2009, Sherwood called Robinson a loose woman. Robinson told Sherwood she was offended and did not appreciate his comment. Sherwood replied that she was a typical black girl from Bronx. Sherwood also said that Latin women have a reputation for being loose and Robinson proved that to be true.

(Complaint ("Compl.") ¶ 17.)

   Starting in May 2010, Robinson began raising her concerns about these comments with her colleagues and with representatives from Gucci's HR department. In response, Sherwood

allegedly joked about Robinson's complaints, and continued making similar comments to Robinson. In June 2010, Robinson again raised her concerns with the HR department.

On July 17, 2010, Robinson received a letter from HR "reprimanding her for behaving inappropriately" at a work function she had attended during the prior year, "even though she was not advised of the nature of the alleged inappropriate conduct." (Compl. ¶ 35.) Robinson responded to the letter by email to Leleck and Hilarie Nenner, Manager of Gucci HR, in which Robinson again raised her concerns about Sherwood's comments. Immediately thereafter, Robinson requested a meeting with Nenner. Robinson did not receive a response.

On July 26, 2010, Robinson was placed on administrative leave and was escorted out of the building by security.

On September 13, 2010, Robinson was instructed to return to work the following day, and was given the option to work in the office in Seacaucus, New Jersey or return to work in the New York office. Robinson elected to work in the New York office. When she reported to work the next day, Mascazzini and Leleck ordered her to report to work in the New Jersey office. Robinson "objected and explained that the commute was too burdensome and she cannot lawfully practice law in New Jersey because she is not licensed to do so. Nonetheless, Leleck and Mascazzini ordered Robisnon to report to work in New Jersey." (Compl. ¶ 42.) Robinson stated that she was being subjected to retaliation, but in response Leleck repeatedly stated, "You are to be at the New Jersey office September 15th at 8:30 in the morning." (Compl. ¶ 43.)

The office to which Robinson was assigned in New Jersey was "hot and dirty," and she was not given a computer or any work assignments. (Compl. ¶ 44.) Robinson noticed that she was experiencing symptoms of depression and sought medical treatment. On September 26, 2010, she was hospitalized "for anxiety and severe depression." (Compl. ¶ 46.) She notified Leleck of her situation and was placed on medical leave.

3

Upon her return to work on October 20, 2010, Robinson had several conflicts with Gucci HR personnel regarding accommodations for her medical appointments. On October 25, 2010, she received an email from HR "reprimanding her for being unprofessional" in her correspondence with HR regarding scheduling days off for her medical appointments. On October 27, 2010, she was called to a meeting with Nenner, who reprimanded her for "being unprofessional and rude in the email to Leleck wherein Robinson expressed her belief that Gucci violated her right to [Family Medical Leave Act] leave." (Compl. ¶56.) That same day, Nenner and a member of Gucci's legal counsel placed Robinson on administrative leave "pending an investigation and until further notice." (Compl. ¶ 57.)

On November 2, 2010, Robinson received a letter from Leleck terminating her employment effective November 1, 2010.

### B. Procedural History

Robinson filed the Complaint in this case on June 1, 2011. At that time, the case was assigned to the Honorable William H. Pauley, III. On October 3, 2011, the case was reassigned to the undersigned pursuant to this District's Rules for the Division of Business Among District Judges governing the reassignment of cases to new District Judges.

On October 7, 2011 Mascazzini filed the instant motion.

## II. Discussion

### A. Motion to Dismiss Standard

In order to survive a motion to dismiss pursuant to Federal Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,

4

1949 (2009). The Court must accept as true all well-pleaded factual allegations in the complaint, and "draw [ ] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006) (internal quotations omitted). On the other hand, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949; *see also Twombly*, 550 U.S. at 555 (noting that a court is "not bound to accept as true a legal conclusion couched as a factual allegation" (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))).

In a recent summary of the plausibility standard, the Second Circuit explained that

> the *Twombly* Court stated that a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, but mere labels and conclusions or formulaic recitations of the elements of a cause of action will not do; rather, the complaint's *factual* allegations must be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim plausible.

*Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570) (internal citations and quotation marks omitted). The court further explained that this "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegality." *Id.* (citing *Twombly*, 550 U.S. at 556) (quotation marks omitted).

The Second Circuit has held that "the pleading requirements in discrimination cases are very lenient, even *de minimis*," *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998)). Prior to its decision in *Twombly*, the Supreme Court held that, in a discrimination case, a plaintiff is not required to plead in its complaint the specific elements of a *prima facie* case under the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 492 (1973). *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (explaining that the burden-shifting framework "is an

evidentiary standard, not a pleading requirement"). The Court expressly reaffirmed this holding in the *Twombly* decision. *See* 550 U.S. at 569-70 (citing *Swierkiewicz*, 534 U.S. at 508). The Second Circuit has also affirmed the continued force of the *Swierkiewicz* rule even after *Twombly* and *Iqbal*. *See Arista*, 604 F.3d at 120; *Boykin v. KeyCorp*, 521 F.3d 202, 213-14 (2d Cir. 2008) (holding post-*Twombly*, but pre-*Iqbal*, that *Swierkiewicz* "applies with equal force to any claim . . . that the *McDonnell Douglas* framework covers" and retains its "vitality" post-*Twombly*). "Reconciling *Swierkiewicz*, *Twombly*, and *Iqbal*, a complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss; however, 'the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim.'" *Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010) (quoting *Fowler v. Scores Holding Co.*, 677 F.Supp.2d 673, 679 (S.D.N.Y. 2009)).

## B. Applicable Law

Robinson brings claims against her former employer under Title VII, as well as the NYHRL and the New York City Human Rights Law. However, against Mascazzini and the other individual defendants, Plaintiff brings claims only under the NYHRL.[1]

Section 296(1) of the New York State Human Rights Law provides that "[i]t shall be an unlawful discriminatory practice . . .[f]or an employer . . . because of an individual's . . . race, . . . color, national origin, . . . sex, [or] disability, . . . to . . . bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). The same statute also provides that it shall be unlawful to retaliate against an employee because she has "opposed" any such discriminatory practice. N.Y. Exec. Law § 296(1)(e).

---

[1] Courts in this circuit "typically treat Title VII and NYHRL discrimination claims as analytically identical, applying the same standard of proof to both claims." *Salamon v. Our Lady of Victory Hosp.* 514 F.3d 217, 226 n.9 (2d Cir. 2008)

To state a claim for retaliation under the NYHRL, a plaintiff must allege that "(1) she has engaged in protected activity, (2) her employer was aware that she participated in such activity, (3) she suffered an adverse employment action based upon her activity, and (4) there is a causal connection between the protected activity and the adverse action." *Harper v. New York City Housing Authority*, 673 F. Supp. 2d 174, 181-82 (S.D.N.Y. 2009) (quoting *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 312-13, 786 N.Y.S.2d 382, 395-96, 819 N.E.2d 998, 1011-12 (2004)).

Generally, only the employer itself, and not individual employees, may be liable for discrimination under Title VII or the NYHRL. *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003). However, section 296(6) of the NYHRL provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. Law § 296(6). The Second Circuit has held that this provision imposes personal liability on an individual "who actually participates in the conduct giving rise to a discrimination claim." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). *See also Feingold v. New York*, 366 F.3d 138, 158-59 (2d Cir. 2004). Courts in the circuit have emphasized that

> Aiding and abetting liability requires that the aider and abettor share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose. Consequently, to find that a defendant actually participated in the discriminatory conduct requires a showing of direct, purposeful participation.

*Fried v. LVI Services, Inc.*, No. 10 Civ. 9308, 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011) (quoting *Brice v. Sec. Operations Sys., Inc.*, No. 00 Civ. 2438, 2001 WL 185136, at *4 (S.D.N.Y. Feb. 26, 2001)) (quotation marks omitted); *see also Robles v. Goddard Riverside Community Ctr.*, No. 08 Civ. 4856, 2009 WL 1704627, at *3 (S.D.N.Y. June 17, 2009).

7

## C. Application of Law to Facts

The Complaint discusses Mascazzini's actions only once: After Robinson returned from her first administrative leave, she was offered the choice to work in either the New York or New Jersey office, and elected to work in the New York office. The references to Mascazzini appear in paragraphs 42 and 43 of the Complaint:

> 42. When Robinson reported to work on September 14, Mascazzini and Leleck ordered Robinson to report to work in the New Jersey office. Robinson objected and explained that the commute was too burdensome and she cannot lawfully practice law in New Jersey because she is not licensed to do so. Nonetheless, Leleck and Mascazzini ordered Robinson to report to work in New Jersey.
>
> 43. Robinson complained to Mascazzini and Leleck that she was being subjected to retaliation. Despite this, Leleck repeated multiple times, "You are to be at the New Jersey office September 15th at 8:30 in the morning."

(Compl. ¶¶ 42-43.)

Mascazzini concedes, for the purposes of this motion, that the move to New Jersey constituted an adverse employment action and does not dispute that Robinson engaged in protected activity. (Defendant Mascazzini's Reply Memorandum of Law in Further Support of Motion to Dismiss (Dkt. No. 19) at 3 n.1.) Nevertheless, he argues that Robinson has not alleged sufficient facts to support a claim against him because there are no allegations that Mascazzini "actually participate[d]" in any alleged discriminatory or retaliatory conduct, nor any facts to show that Mascazzini "share[d] the intent or purpose" of his co-defendants. *Fried*, 2011 WL 2119748, at *7.

Mascazzini is correct that there are no allegations that Mascazzini participated in the discrimination that gave rise to Robinson's initial complaints regarding a hostile work environment. However, keeping in mind the Second Circuit's admonition that the "the pleading requirements in discrimination cases are very lenient, even *de minimis*," *Deravin*, 335 F.3d at

8

200, Robinson has adequately pleaded a claim against Mascazzini for aiding and abetting retaliation against her.

Mascazzini argues that there is no allegation that he had knowledge of Robinson's alleged prior protected conduct when he participated in the decision to assign her to the New Jersey office. However, at the same meeting in which Mascazzini allegedly participated in ordering Robinson to report to the New Jersey office, Robinson stated that this move would be burdensome for her, and that she was being subjected to retaliation. She also explained that she was not licensed to practice law in New Jersey. Mascazzini nevertheless apparently assented to the instruction for Robinson to work in the New Jersey office.

As the Second Circuit has explained (in the context of reviewing a jury verdict), "[a]ctions taken by an employer that disadvantage an employee for no logical reason constitute strong evidence of an intent to discriminate." *Stratton v. Dep't for the Aging for the City of New York*, 132 F.3d 869, 880 n.6 (2d Cir. 1997). Here, taking the allegations of the complaint as true, and given that Robinson was not licensed to practice law in New Jersey, there does not appear to have been a logical reason for her to be assigned to work there. Moreover, to whatever extent Mascazzini may have been ignorant of Robinson's past protected conduct, Robinson stated at the meeting that she believed she was being subjected to retaliation. Despite this, Mascazzini allegedly persisted in assigning her to the New Jersey office.

Based on the facts pleaded, the Court can draw the reasonable inference that Macazzini aided and abetted retaliation against Robinson for her past complaints about discrimination at Gucci. As the Supreme Court emphasized in *Iqbal*, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 129 S.Ct. at 1950. It is, of course, possible that the evidence will demonstrate that Mascazzini had legitimate non-discriminatory and non-

9

retaliatory reasons for his actions, but that is an issue to be decided on summary judgment, not at the motion to dismiss stage.

## III. Conclusion

For the aforementioned reasons, Mascazzini's motion to dismiss the complaint against him is DENIED.

SO ORDERED.

Dated: New York, New York
January 26, 2012

_____
J. PAUL OETKEN
United States District Judge

The Clerk of Court is Directed to:
✓ Term motion (doc. # 11 )
___ Doc. and File As:

10